IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EDWARD FALKOSKY, | Case No. 1:22-cv-232 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE THOMAS M. PARKER |
| COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

 Plaintiff, Edward Falkosky, seeks judicial review of the final decision of the Commissioner of Social Security, denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. This is not the court's first encounter with the denial of Falkosky's application. We previously vacated and remanded an earlier Administrative Law Judge ("ALJ") decision for the ALJ to obtain a consultative opinion on Falkosky's functional limitations. On remand, the ALJ obtained a consultative opinion by issuing medical interrogatories to Natalie Litvinsky, MD, rejected Dr. Litvinsky's opinion on Falkosky's manipulative limitations, and again determined that Falkosky was not entitled to DIB.

 Falkosky now argues that ALJ's handling of Dr. Litvinsky's opinion was contrary to law. Upon review of the ALJ's decision on remand, the court finds that the ALJ failed to apply proper legal standards by giving logically incoherent reasons for discounting Dr. Litvinsky's opinion of Falkosky's manipulative limitations. The court further finds that the ALJ failed to comply with the court's previous remand decision when the ALJ issued inherently defective medical

interrogatories. The Commissioner's final decision denying Falkosky's application for DIB must, therefore, be vacated and Falkosky's case remanded to a different ALJ for further consideration.

**I.  Procedural History**

Falkosky applied for DIB on February 28, 2017. (Tr. 145).[1] Falkosky alleged that he became disabled on November 20, 2011, due to: (i) degenerative track disease of the left hip; (ii) high blood pressure; (iii) hyperlipidemia; (iv) Dupuytren's contracture; (v) "Finger Stiffeners;" (vi) osteoarthrosis; (vii) carpal tunnel syndrome; (viii) trigger finger; (ix) "Contraction of Palm;" (x) abnormal enzymes; (xi) high cholesterol; and (xii) degenerative hand arthritis. (Tr. 145, 160). The Social Security Administration ("SSA") denied Falkosky's application initially and upon reconsideration. (Tr. 56–61, 63–69). On July 18, 2018, ALJ Peter Beekman heard Falkosky's case telephonically and denied his claim in an October 29, 2018 decision. (Tr. 18–27). On September 18, 2019, the Appeals Council declined further review. (Tr. 1–3).

On November 11, 2019, Falkosky sought judicial review. CM/ECF for U.S. Dist. Ct. for N.D. Ohio, No. 1:19-cv-2632, doc. 1. On September 10, 2020, this court vacated the ALJ's October 29, 2018 decision and remanded the case for further proceedings. (Tr. 557-77); *see also Falkosky v. Comm'r of Soc. Sec.*, No. 1:19-cv-2632, 2020 U.S. Dist. LEXIS 165462 (N.D. Ohio Sept. 10, 2020). The court determined that the ALJ failed to apply proper legal standards under *Deskin* because: (i) the record contained no medical opinion on Falkosky's functional limitations; (ii) the record did not show relatively little physical impairment; and (iii) the ALJ's RFC findings were based on the ALJ's own lay interpretation of Falkosky's reported symptoms,

---

[1] The administrative transcript appears in ECF Doc. 6.

his physicians' suggested treatment, and the lack of treatment reflected in the record. (Tr. 568–73); *see also Deskin v. Comm'r of Soc. Sec.*, 605 Supp.2d 908, 912 (N.D. Ohio 2008) (holding that the ALJ's duty to develop the record may require the ALJ to obtain a medical opinion when the record contains none or only an outdated nonexamining agency opinion, unless the medical evidence shows little physical impairment and the ALJ can make a commonsense judgment about functional capacity).

On February 12, 2021, the Appeals Council issued a remand order pursuant to the court's decision. (Tr. 579–80). ALJ Beekman held a second, telephonic hearing on May 11, 2021, after which he issued a request for a medical expert's interrogatories. (Tr. 507–24). On July 18, 2021, the SSA received responses to the ALJ's interrogatories from Natalie Litvinsky, MD. (Tr. 799–801). On November 16, 2021, the ALJ held a third telephonic hearing to receive vocational expert testimony. (Tr. 500–06).

On November 30, 2021, the ALJ issued a new decision, denying Falkosky's application. (Tr. 483–94). In doing so, the ALJ determined at Step Four that Falkosky had the residual functional capacity ("RFC") to perform medium work, except that:

> [Falkosky] can occasionally lift and carry 50 pounds and frequently lift and carry 25 pounds. He can stand or walk for 6 hours in an 8-hour workday. He can sit for 6 hours in an 8-hour workday. He can constantly push, pull, and use foot pedals. He can frequently climb ramps and stairs. He can occasionally climb ladders, ropes, or scaffolds. He can frequently stoop, kneel, crouch, or crawl. He can frequently reach, handle, finger, or feel with the bilateral upper extremities. There are no visual, communication, environmental, or mental health limitations.

(Tr. 488). Falkosky did not seek Appeals Council review, rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 416.1484(d). On February 10, 2022, Falkosky filed a complaint to obtain judicial review. ECF Doc. 1.

3

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Falkosky was born on March 27, 1955. (Tr. 145). He was 56 years old on the alleged onset date, 59 years old on his date last insured (December 31, 2014), and 66 years old on the date of the ALJ's decision on remand. (Tr. 486). Falkosky completed one year of college. (Tr. 162). And he had previously worked as an extruder operator, which the ALJ determined he was no longer able to perform. (Tr. 162, 492).

### B. Relevant Medical Evidence

On February 7, 2012, Falkosky visited Felix C. Nwaokafor, MD, reporting "intermittent locking of the left finger" which he'd had for months and recently became painful at the palm. (Tr. 225–26). Falkosky requested cortisone injections. (Tr. 226). One physical examination, Falkosky had distal metacarpal tenderness and "'catchy' left little finger at the second interphalangeal joint." *Id.* Dr. Nwaokafor diagnosed Falkosky with trigger finger and proposed various treatment options (strapping, exercise, cortisone injection, and surgery), of which Falkosky chose a cortisone injection. *Id.* Dr. Nwaokafor placed an order for the injection and recommended that Falkosky continue with finger exercises and follow up as needed. *Id.* Falkosky did not report hand-related symptoms at any of his subsequent visits to Dr. Nwaokafor, through May 2, 2012. *See* (Tr. 222–25).

On September 10, 2012, Falkosky established care with Thomas D. Ginley, DO, for trigger finger in his left hand, though Falkosky did not endorse any adverse symptoms. (Tr. 324–25). On physical examination, Falkosky had unremarkable results. (Tr. 326). Dr. Ginley referred Falkosky to an orthopedic hand specialist. (Tr. 326, 328). Falkosky did not report hand-related symptoms through March 2013. *See* (Tr. 315–21). And during a November 28, 2012

4

follow-up on his hyperlipidemia, Falkosky reported that his activities included yard work and exercising on a stationary bike for ten minutes a day. (Tr. 318).

On April 5, 2013, Falkosky visited Julia E. Bruner, MD, reporting tingling pain in his upper extremities, extending to his fingers, right more than left. (Tr. 314). On physical examination, Falkosky had unremarkable results. (Tr. 315). Dr. Bruner diagnosed Falkosky with peripheral neuropathy, ordered an EMG, and advised Falkosky to use wrist splints as needed and follow-up with his primary care physician. *Id.*

On May 20, 2013, Falkosky returned to Dr. Ginley, reporting "feeling well" since his last visit. (Tr. 311–12). On physical examination, Falkosky had unremarkable results. (Tr. 312). Falkosky's EMG results, however, were positive for "bilateral median mononeuropathy at or about the wrists, of moderate-severe severity," "axonal loss on the right," and "demyelination bilaterally." *Id.* Dr. Ginley again referred Falkosky to an orthopedic hand specialist. *Id.* Falkosky did not report hand-related symptoms through November 2013. *See* (Tr. 307–11).

On January 31, 2014, Falkosky requested from Dr. Ginley another referral to an orthopedic hand specialist, indicating that his previous referrals "ran out," which Dr. Ginley provided. (Tr. 307).

On May 9, 2014, Falkosky underwent x-ray examination of his hands. (Tr. 342–43). His right-hand x-ray results showed degenerative changes on the radial aspect of the wrist. (Tr. 342). His left-hand x-ray results showed minor degenerative changes. (Tr. 343). Falkosky also consulted with Michael W. Keith, MD, reporting bilateral numbness which had persisted for four years. (Tr. 304). Dr. Keith stated that Falkosky's symptoms were consistent with carpal tunnel syndrome and discussed with Falkosky treatment options: (i) conservative management; (ii) braces; (iii) injections; and (iv) surgery. *Id.*

5

On July 11, 2014, Falkosky returned to Dr. Keith, reporting forearm and hand pain, numbness and tingling, and triggering and locking of fingers. (Tr. 301). On physical examination, Falkosky had positive Tinel's, Phalen's, and palmar wrist pressure tests. *Id.* Dr. Keith diagnosed Falkosky with carpal tunnel syndrome and, based on the x-rays, CMC joint arthritis. (Tr. 301–02). Falkosky declined injections, and Dr. Keith prescribed braces. (Tr. 302).

On August 22, 2014, Falkosky requested from Dr. Keith an injection for his hand pain. (Tr. 300). Dr. Keith administered a corticoid injection in the right fifth finger and left fourth finger trigger. *Id.*

Falkosky's date last insured (and therefore the end of the period under adjudication) was December 31, 2014, through which he did not receive additional treatment for his hand impairment. Because the ALJ did not summarize, and Falkosky's arguments do not concern, the evidence post-dating Falkosky's last insured date, those treatment notes are only briefly summarized. In July 2015, Falkosky reported to Dr. Keith finger triggering, locking, numbness, and tingling, pursuant to which he underwent carpal tunnel release surgery in August 2015. (Tr. 289–93). Falkosky subsequently underwent occupational therapy treatment. (Tr. 285–289). And Falkosky underwent three more surgical releases of trigger fingers in September 2016, April 2017, and September 2018. (Tr. 272–74, 399–400, 747).

    C.    **Relevant Opinion Evidence**

        1.    **Consultative Examiner – Natalie Litvinsky, MD**

On July 18, 2021, neurologist Natalie Litvinsky, MD, answered medical interrogatories submitted to her by the ALJ. (Tr. 799–801). The interrogatories consisted of a three-page form, which asked Dr. Litvinsky to: (i) identify Falkosky's medical impairments based on her review of the medical record; (ii) express an opinion on whether Falkosky's impairments met or

medically equaled any of the Listings on or before December 31, 2014; and (iii) provide an RFC assessment. *Id.*

Dr. Litvinsky identified carpal tunnel syndrome as Falkosky's only neurologic impairment and opined that Falkosky did not meet or medically equal the criteria for any of the Listings as of December 31, 2014. (Tr. 799). And Dr. Litvinsky opined that Falkosky had no neurologic exertional, postural, visual, communication, or environmental limitations. (Tr. 800–01). However, Dr. Litvinsky found that Falkosky could only "frequently" reach and "occasionally" handle, finger, and feel. (Tr. 800). Dr. Litvinsky did not explain the basis for her RFC findings. *See* (Tr. 799–801).

### 2. State Agency Consultants

On March 11, 2017, Leon D. Hughes, MD, declined to issue an opinion on Falkosky's functional limitations because of a lack of sufficient evidence. (Tr. 59–61). On June 5, 2017, Stephen Sutherland, MD, concurred with Dr. Hughes that there was insufficient evidence from which to determine the severity of Falkosky's impairments. (Tr. 67–68).

### D. Falkosky's Statements

On February 28, 2017, Falkosky wrote to the SSA that his fingers had been locking up constantly since 2012 and that both of his arms have been afflicted by carpal tunnel syndrome since 2014. (Tr. 158). Because of his arm/hand impairments, he was unable to work. *Id.*

### E. Relevant Testimonial Evidence

### 1. 2018 Hearing

At the July 2018 administrative hearing, Falkosky testified that his hand problems began in 2011, for which he received injections. (Tr. 39). In 2013, his hands started "locking up." *Id.* And in 2015, after the date last insured, he started having surgeries because he could no longer

7

tolerate the injections. (Tr. 39–40). Falkosky testified that injections provided relief for between three and eight months, during which he was able to make a fist. (Tr. 39). As relief subsided, his hands stiffened to the point where he could not grasp. (Tr. 39–40). Falkosky testified that he could not tolerate injections because the periods of relief were getting shorter, and he could only get injections in one hand at a time and not all fingers at once. (Tr. 39, 41).

Falkosky testified that his carpal tunnel was worse on his right, dominant hand than his left. (Tr. 40). He testified that he could not grip or lift heavy objects. (Tr. 42–43). He could lift a gallon of milk but only in the hand that last received an injection. (Tr. 43). Falkosky also testified that his fingers would also lock up, after which he needed to pull them back apart. (Tr. 42).

Falkosky testified that between 2011 and the end of 2014 he was able to drive a car, albeit with difficulty gripping the wheel. (Tr. 45). For example, he would make trips to Pennsylvania (approximately an 80-minute drive) to visit his aunt. (Tr. 46–48). During that period of time Falkosky lived with his mother, who did most household chores. (Tr. 45). Falkosky testified that if he attempted to do anything he would suffer pain at night. (Tr. 45–46).

Vocational expert ("VE") Michael Klein testified that someone with the ALJ's hypothetical limitations could perform work at the medium exertional level, such as cleaner, packer, and production helper. (Tr. 50–52). If limited work at the light exertional level, the VE testified the individual could work as a marker, weigher, and office cleaner. (Tr. 53).

2. **2021 Hearings**

At the May 2021 administrative hearing, Falkosky testified consistent with his previous testimony. (Tr. 513–16). He also testified that he could hardly hold a pen because of his carpal

8

tunnel syndrome. (Tr. 516). And his difficulty gripping was that once he grasped an object one or two times his fingers would lock up into a fist. (Tr. 515–16).

VE Robert Bond testified that someone with the ALJ's hypothetical limitations could perform work at the medium exertional level, such as a molding machine operator, plastics spreading machine operator, and a kettle operator. (Tr. 517–19). If further limited to occasional handling, fingering, and feeling, the VE testified the person could not perform work at either the light or medium exertional levels. (Tr. 523).

Before the administrative hearing closed, Falkosky requested that the ALJ inform the physician to whom the medical interrogatories where being sent of his date last insured so there would be no confusion as to what time period the physician was addressing. (Tr. 523–24). The ALJ agreed. (Tr. 524).

At the November 2021 administrative hearing, VE Paula Zinsmeister testified that someone with the ALJ's hypothetical limitations could perform work at the medium exertional level, such as store laborer, machine package sealer, and hospital cleaner. (Tr. 502–04). If limited consistent with Dr. Litvinsky's opinion, the VE testified that the individual could not work at any other exertional level. (Tr. 504–05).

### III. Law & Analysis

#### A. Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this standard, the court cannot decide the facts anew, evaluate credibility, or re-weigh the evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). And, even if a preponderance

of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "'so long as substantial evidence also supports the conclusion reached by the ALJ.'" *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Jones*, 336 F.3d at 477); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"). But, even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

      **B.**     **Step Four: Opinion Evidence**

Falkosky argues that the ALJ failed to apply proper legal standards in his evaluation of Dr. Litvinsky's opinion. ECF Doc. 10 at 7–14. Falkosky argues that the ALJ failed to explain how he considered the regulatory factors of consistency and supportability, as well as Dr. Litvinsky's specialty and familiarity with disability programs and their evidentiary requirements. ECF Doc. 10 at 11. And Falkosky argues that ALJ's reasons for discounting Dr. Litvinsky's opinion were defective because: (i) by the ALJ's own reasoning, Falkosky had

10

greater manipulative limitations than those found by Dr. Litvinsky; (ii) the interrogatories required that Dr. Litvinsky confine her opinion to the period under adjudication; and (iii) discounting Dr. Litvinsky's opinion as temporally irrelevant was unequitable. ECF Doc. 10 at 12–13; ECF Doc. 13 at 2–5.

The Commissioner responds that the ALJ appropriately discounted Dr. Litvinsky's opinion based on the ALJ's implicit determination that Dr. Litvinsky failed to substantiate her opinion with objective medical evidence predating the date last insured, which alone could sustain the ALJ's decision to discount Dr. Litvinsky's opinion. ECF Doc. 11 at 14–16, 18. The Commissioner argues that the ALJ indirectly attacked the consistency of Dr. Litvinsky's opinion through his RFC findings. ECF Doc. 11 at 18–20. And the Commissioner argues that the ALJ committed a mere scrivener's error in stating that "greater" limitations than those determined by Dr. Litvinsky were warranted. ECF Doc. 11 at 20–21. The Commissioner also argues that Dr. Litvinsky's opinion was an improper check-box opinion, which could serve as another basis for rejecting the opinion. ECF Doc. 11 at 16.

At Step Four, the ALJ must weigh every medical opinion that the SSA receives. 20 C.F.R. § 404.1527(c). Under the regulations applicable to Falkosky's claim, the ALJ must determine the weight due to an non-examining source opinion by considering the examining and treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and whether the opinion was issued by a specialist. 20 C.F.R. § 404.1527(c)(1)–(5); *see* SSR 06-03p, 2006 SSR LEXIS 5, at \*6–7 (2006). However, the ALJ need not give an exhaustive factor-by-factor analysis. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). It is enough that the ALJ consider the opinion, assign weight, and give an explanation as to why the conflicting aspects of the opinion were rejected. 20 C.F.R.

11

§ 404.1527(f)(2); *see also* SSR 96-6p, 1996 SSR LEXIS 3, at *6 (July 2, 1996); SSR 96-8p, 1996 SSR LEXIS 5, at *20 (July 2, 1996); SSR 06-03p, 2006 SSR LEXIS 5, at *15–16.

The ALJ failed to apply proper legal standards in giving little weight to the opinion of Dr. Litvinsky. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. The ALJ complied with the regulations when he stated the weight assigned to Dr. Litvinsky's opinion and evaluated her opinion under the 20 C.F.R. § 404.1527(c) factors. 20 C.F.R. § 404.1527(f)(2); SSR 96-6p, 1996 SSR LEXIS 3, at *5-6; *see* (Tr. 488, 490–91). And contrary to Falkosky's argument, the ALJ was not required to explain how the ALJ considered each specific regulatory factor. *See, e.g.*, *Washington v. Berryhill*, No. 3:18-cv-0078, 2019 U.S. Dist. LEXIS 17484, at *31 (M.D. Tenn. Feb. 4, 2019) ("While the ALJ is not required to explicitly discuss each of [the regulatory factors], the record must nevertheless reflect that the ALJ considered them."), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 26929 (M.D. Tenn. Feb. 19, 2019); *Germany v. Comm'r of Soc. Sec.*, No. 5:18-CV-283, 2018 U.S. Dist. LEXIS 203341, at *21 (N.D. Ohio Nov. 6, 2018) ("[N]othing in the regulations require the ALJ to discuss each of the factors explicitly in his decision."), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 203343 (N.D. Ohio Nov. 30, 2018).

Where the ALJ failed to comply with the regulations, however, was in his explanation for rejecting Dr. Litvinsky's opinion. The ALJ stated:

> The undersigned [*sic.*] little weight to this opinion because it was given subsequent to the date last insured of December 31, 2014. However, it does support the medium residual functional capacity, but the totality of the evidence supports additional and greater exertional, postural, and manipulative limitations as outlined in Finding No. 5 above.

(Tr. 490–91). Both reasons are troubling. Evidence post-dating the date last insured remains relevant to the extent it relates back to the claimant's condition on or before the last insured date.

12

*Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020). The mere fact that Dr. Litvinsky's post-dated the last insured date would not, on its own, be a proper basis upon which to discount it. *See Anderson v. Comm'r of Soc. Sec.*, 440 F. Supp.2d 696, 699 (E.D. Mich. 2006).

The Commissioner argues that the ALJ implicitly determined that Dr. Litvinsky's opinion did not relate back to the period under adjudication when the ALJ noted that Dr. Litvinsky cited exhibits from 2015. ECF Doc. 11 at 15, 18. But the Commissioner's argument is inconsistent with the ALJ's explicit reasoning: that the opinion warranted little weight because it was *given* after the date last insured. We cannot accept the Commissioner's after-the-fact reasons to support the ALJ's conclusion as a substitute for those actually given by the ALJ. *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th 1991) ("Courts are not at liberty to speculate on the basis of an administrative agency's order … [nor is the court] free to accept appellate counsel's *post hoc* rationalization for agency action in lieu of reasons and findings enunciated by the [agency]." (citation omitted; internal quotation marks omitted)). Moreover, the fact that Dr. Litvinsky cited exhibits post-dating the period under adjudication does not necessarily mean that Dr. Litvinsky's opinion of Falkosky's functional limitations was not temporally relevant. Two of the interrogatories asked Dr. Litvinsky to limit herself to Falkosky's condition "prior to December 31, 2014." (Tr. 799–800). Indeed, the ALJ agreed to instruct the consultative physician on Falkosky's last insured date to avoid the risk of a temporally irrelevant opinion. (Tr. 524). For the ALJ to then use the lack of temporal proximity of the opinion as a basis for discounting the opinion is not only contrary to law but lacks logical coherence. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Martonik v. Heckler*, 773 F.2d 236, 240–41 (8th Cir. 1985)); *Gambill v. Bowen*, 823 F.2d 1009, 1013 (6th Cir. 1987); *see also Cameron v. Saul*, No. 20-10119, 2020

13

U.S. Dist. LEXIS 252484, at *17 (E.D. Mich. Dec. 23, 2020), *report and recommendation adopted*, 2021 U.S. Dist. LEXIS 60605 (E.D. Mich. Mar. 30, 2021). Were the court to uphold the ALJ's reasoning on this point, the entire remand to reconsider Falkosky's claim in light of a newly obtained medical opinion would be reduced to some kind of pointless "heads I win, tails you lose" exercise. That is not what this court had in mind in ordering a remand.

That brings us to the ALJ's second reason for assigning little weight to Dr. Litvinsky's opinion: that the evidence supported "additional and greater … manipulative limitations." (Tr. 496). That finding created a conflict between the ALJ's RFC finding that Falkosky could frequently handle, finger, and feel (Tr. 488) and Dr. Litvinsky's opinion that Falkosky could only do so occasionally (Tr. 800), which the ALJ did not resolve. SSR 96-8p, 1996 SSR LEXIS 5, at *20 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

The Commissioner invites us to overlook the conflict in the ALJ's decision as a mere scrivener's error because it is clear the ALJ did not mean to include "manipulative limitations" among those for which the ALJ believed the evidence supported greater limitations. ECF Doc. 11 at 20–21. The Commissioner is correct that scrivener's errors do not ordinarily require a remand when the author's true meaning is "easily determinable." *E.g.*, *Duvall v. Comm'r of Soc. Sec.*, No. 2:19-cv-2346, 2020 U.S. Dist. LEXIS 2738, at *11 (S.D. Ohio Jan. 8, 2020); *Barnes v. Comm'r of Soc. Sec.*, No. 16-13714, 2018 U.S. Dist. LEXIS 49545, at *25 n.2 (E.D. Mich. Mar. 6, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 48827 (E.D. Mich. Mar 26, 2018); *Lete v. Colvin*, No. 14-66, 2015 U.S. Dist. LEXIS 97929, at *15 (E.D. Ky. July 28, 2015). And reading the ALJ's reasons for rejecting Dr. Litvinsky's opinion in context with the

14

ALJ's decision as a whole, it is clear that the ALJ rejected Dr. Litvinsky's opinion of Falkosky's manipulative limitations and found that the objective evidence warranted *less* limitations.

But overlooking the ALJ's scrivener's error trades one logical bridge problem for another, because the ALJ did not explain on what basis he rejected Dr. Litvinsky's opinion of Falkosky's manipulative limitations. Although not framed in such terms, the Commissioner argues that the omission is harmless because: (i) Dr. Litvinsky's opinion was an improper check-box opinion; and (ii) the ALJ's rationale can be gleaned from his analysis of Falkosky's subjective symptom complaints. ECF Doc. 11 at 16, 19–20. Both are unavailing.

An error in the ALJ's evaluation of the opinion evidence may be harmless in one of three circumstances: (i) when the opinion was "so patently deficient that the Commissioner could not possibly credit it"; (ii) when the Commissioner made findings consistent with the opinion; or (iii) the Commissioner otherwise met the goals of the regulations by indirectly attacking the opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010). The first and third circumstances are at issue here.

Opinions for which a medical source gives no explanation are frequently determined to be "patently deficient." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016); *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566–67 (6th Cir. 2016); *see also, e.g.*, *Burgess v. Comm'r of Soc. Sec.*, No. 19-13243, 2021 U.S. Dist. LEXIS 58803, at *15 (E.D. Mich. Mar. 29, 2021); *Fleming v. Comm'r of Soc. Sec.*, No. 4:10-CV-25, 2011 U.S. Dist. LEXIS 81040, at *28 (E.D. Tenn. July 5, 2011), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 81613 (E.D. Tenn. July 25, 2011). Dr. Litvinsky gave no explanation for her opinion of Falkosky's manipulative limitations, which would ordinarily render the ALJ's articulation error

15

harmless. But unlike the ordinary case, here the ALJ created the defect the Commissioner now attempts to use as an excuse to justify the ALJ's failure to abide by the regulatory requirement that he explain his reasons for rejecting conflicting opinion evidence. The interrogatories the ALJ provided to Dr. Litvinsky did not ask her to provide an explanation for her opinion on Falkosky's functional limitations. *See* (Tr. 799–801). And it was the ALJ (or SSA) that created the interrogatories, not Dr. Litvinsky, Falkosky, of Falkosky's lawyer. Because any weakness arising from the doctor's failure to answer a question *that was not asked* rests with the ALJ, the court finds that the Commissioner cannot now use that error as a basis for affirming the ALJ's decision. *See Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir. 1991) ("[A] party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit."); *see also Patterson v. Comm'r of Soc. Sec.*, No. 1:16CV420, 2016 U.S. Dist. LEXIS 188108, at *36 (N.D. Ohio Oct. 31, 2016) (applying the invited error doctrine in the Social Security context), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 100204 (N.D. Ohio June 28, 2017).

The Commissioner's second argument for harmless error is that we can glean the ALJ's reasons for rejecting Dr. Litvinsky's opinion on Falkosky's manipulative limitations from the ALJ's analysis of Falkosky's subjective symptom complaints. The ALJ reasons for discounting Falkosky's subjective hand complaints were:

> Evidence of record regarding [Falkosky's] daily activities is consistent with a residual functional capacity for medium work. Despite [Falkosky's] allegations regarding his hands and fingers, [he] acknowledged that he drove during the relevant timeframe including driving his mother to Pennsylvania so that she could visit a family member in a nursing home. … No treating source refers to the claimant as having incapacitating or debilitating symptoms that would prevent him from returning to the workplace or has otherwise described the claimant as "totally and permanently disabled" by his impairments an complaints.

16

(Tr. 496). The problem with that reasoning is that it lacks logical coherence. Although Falkosky testified that he made 80-minute trips to Pennsylvania, he never testified about the frequency with which he made those trips or how he manipulated the steering wheel or even whether he was the sole driver. (Tr. 46). The ability to irregularly drive 80 minutes would not necessarily contradict Dr. Litvinsky's opinion that Falkosky could only handle, finger, and feel occasionally (no more than 120 minutes of an eight-hour workday). SSR 96-9p, 1996 SSR LEXIS 6, at *8–9 (July 2, 1996). Nor would it mean that Falkosky could drive 80 minutes "five days per week" or the other 360 minutes of a standard eight-hour workday. SSR 96-8p, 1996 SSR LEXIS 5, at *5. And the lack of a treating source statement that Falkosky is disabled should have no bearing on the ALJ's decision, because even if there had been one in the record the ALJ would be required to disregard it as expressing an opinion on a matter reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(1).

      Looking to the remainder of the ALJ's RFC analysis runs into the same problem identified in the previous memorandum opinion and order. Outside of Dr. Litvinsky's opinion, there is very little discussion in the evidence of how Falkosky's symptoms affected his ability to function. The ALJ has not explained how he was able to reach a detailed RFC determination when the state agency consultants weren't. And to the extent the ALJ relied on the objective medical evidence, it remains "difficult to understand how the ALJ gleaned Falkosky's functional abilities from the symptoms and treatments (or lack thereof) documented in his physicians' notes." (Tr. 568). The ALJ appears to have again reviewed Falkosky's records and made certain assumptions about Falkosky's functional abilities[, but b]ecause the ALJ was not a medical expert, he did not have the expertise to make those assumptions." (Tr. 572).

The short of it is that the ALJ failed to follow proper legal standards in evaluating Dr. Litvinsky's opinion. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. The ALJ failed to build an accurate and logical bridge between the evidence and his decision to assign Dr. Litvinsky's opinion little weight. *Fleischer*, 774 F. Supp.2d at 877. The error was not harmless because the VE testified that occasional handling, fingering, and feeling would preclude work at all exertional levels. (Tr. 504–05). And although not argued by Falkosky, the ALJ violated the spirit of the court's remand decision by sending inherently defective medical interrogatories to a consulting physician. The ALJ's decision must, therefore, be vacated and remanded.

C. **Form of Remand**

Falkosky requests that the court remand with instructions that benefits be immediately awarded because of the effect that further delaying his claim will have, as his claim has already been pending for five years. ECF Doc. 10 at 14–15. Falkosky also argues that there is no material question left for the SSA to resolve because Dr. Litvinsky's opinion clearly establishes that he is disabled. ECF Doc. 10 at 15. Alternatively, Falkosky argues that a remand is required for the ALJ to explain his rejection of Dr. Litvinsky's opinion. *Id.* The Commissioner has not addressed this issue. *See generally* ECF Doc. 11.

Generally, benefits may be awarded immediately only "if all essential factual issues have been resolved, the proof of disability is strong, and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming." *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 438–39 (6th Cir. 2013) (internal quotation marks omitted).

An immediate award of benefit is not warranted at this time. As previously noted, there is little evidence of what Falkosky's functional limitations were. And although Dr. Litvinsky's

18

opinion, if credited, would on the current record establish that Falkosky is entitled to benefits, that opinion did not answer all of the questions that exist. Although the ALJ improperly discounted the opinion on the basis that it was too remote, it could well be that Dr. Litvinsky's opinion on Falkosky's manipulative limitations was intended to address the limitations that existed in 2015, following carpal release surgery. But it could also express her view on his limitations prior to the date last insured. Remand to obtain clarification is necessary. And that would give a different ALJ an opportunity to cause Dr. Litvinsky to explain her opinion of Falkosky's manipulative limitations. For the court to conclude that the record conclusively establishes that Falkosky is disabled on account of his hand impairment, the court would have to exercise medical expertise it does not have and make an RFC finding the state agency consultants could not. *See* (Tr. 568–69, 571–72).

Instead of an immediate award of benefits, the court finds it more appropriate to remand with instructions that the case be assigned to a different ALJ. The new ALJ should obtain clarification from Dr. Litvinsky (or a different medical expert) of the issues addressed above.

### IV. Conclusion

Because the ALJ failed to follow proper legal standards in evaluating the opinion evidence and failed to adequately comply with the court's previous remand decision, the Commissioner's final decision denying Falkosky's application for DIB is vacated and Falkosky's case is remanded for further consideration.

**IT IS SO ORDERED.**

Dated: October 27, 2022

Thomas M. Parker
United States Magistrate Judge

19